IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JENNA SAURO on behalf of herself and other persons similarly situated, | : | HON. JEROME B. SIMANDLE |
| | : | Civil No. 12-3682 (JBS/AMD) |
| Plaintiffs, | : | |
| v. | : | **OPINION** |
| L.A. FITNESS INTERNATIONAL, LLC, | : | |
| Defendant. | : | |

APPEARANCES:

Andrew P. Bell, Esq.
Michael A. Galpern, Esq.
LOCKS LAW FIRM LLC
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002
       -and-
Charles N. Riley, Esq.
RILEY & SHAINE
900 N. Kings Highway
Cherry Hill, NJ 08034
       Attorneys for Plaintiff

Alfred J. Lechner, Jr., Esq.
Megan DePasquale, Esq.
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
       Attorneys for Defendant

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

Jenna Sauro ("Plaintiff") brings a putative class action

against Defendant L.A. Fitness International, LLC ("L.A. Fitness"

or "Defendant"), which operates health club facilities throughout

the country, including in New Jersey, alleging that certain provisions of Defendant's Membership Agreement violate state laws designed to protect consumers. Plaintiff claims that the Agreement deceives consumers as to their legal rights and forces to consumers to waive their legal rights in violation of the Consumer Fraud Act and the Truth-in-Consumer Contract, Warranty and Notice Act. Plaintiff also claims that the formatting of the Agreement runs afoul of the Plain Language Act, because the printed type is too small, the Agreement is too long and the waiver provisions are not highlighted properly.

Before the Court is Defendant's motion to dismiss and to strike class allegations. [Docket Item 10.] For the reasons stated below, the Court will grant the motion to dismiss.

## II. Background

The facts of the case are uncontested. On March 21, 2011, Plaintiff Sauro purchased a health club membership from Defendant and paid an initiation fee of $199 and a monthly payment of $26.74, plus tax.[1] [Compl. ¶ 6.] She also signed Defendant's standard three-page Membership Agreement. [Id. ¶ 7; Ex. A.] The dispute in this case concerns the language and format of the

---

[1] The Complaint does not state where Plaintiff purchased her membership. When this action was removed to federal court, Defendant attached a declaration from Suzzie Salcedo, senior vice president at L.A. Fitness, which states that, according to L.A. Fitness records, Plaintiff was a resident of New Jersey at the time she purchased her membership and remains a resident of New Jersey today. [Salcedo Decl. ¶ 9; Docket Item 1-2.]

Agreement, and, accordingly, the Court will describe the Agreement in detail.

The Agreement is more than 3,000 words long and printed "in fine print less than 10 point font . . . ." [Compl. ¶¶ 8, 10(j).] The second page of the Agreement, which displays the heading "Additional Terms and Provisions," contains a "Release and Waiver of Liability and Indemnity" provision ("waiver"). [Id. Ex. A.] The 481-word waiver is circumscribed by a thin line, creating a box around the text and setting the paragraph apart from the rest of the page. The paragraph begins with the words: "IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY" in all capital letters and states that use of the health club involves a risk of injury to persons and property and that "Member assumes full responsibility for such risks." [Id.] The paragraph then states that members agree to hold L.A. Fitness harmless from liability for any loss or damage resulting from Defendant's "negligence . . . or otherwise," as permitted by law:

> In consideration of Member and Member's minor children being permitted to enter any facility of L.A. Fitness . . . Member agrees to the following: Member hereby releases and holds L.A. Fitness, its directors, officers, employees, and agents harmless from all liability to Member, Member's children and Member's personal representatives . . . for any loss or damage, and forever gives up any claim or demands therefore, on account of injury to Member's person or property, including injury leading to the death of Member, whether caused by the active or passive negligence of L.A. Fitness or otherwise, to the fullest extent permitted by law, while Member or Member's minor children are in, upon, or about L.A. Fitness premises

3

or using any L.A. Fitness facilities, services or
equipment.

[Id.] The next sentence adds that members agree to indemnify

Defendant from any loss or damage resulting from the negligence

of others:

> Member also hereby agrees to indemnify L.A. Fitness
> from any loss, liability, damage or cost L.A. Fitness
> may incur due to the presence of Member or Member's
> children in, upon or about the L.A. Fitness premises or
> in any way observing or using any facilities or
> equipment of L.A. Fitness whether caused by the
> negligence of Member(s) or otherwise.

[Id.] The paragraph concludes with the statement that the waiver

and indemnity provisions are as inclusive as permitted under New

Jersey law, and, if terms of the Agreement are held to be

invalid, the rest of the Agreement will remain enforceable:[2]

> Member further expressly agrees that if the foregoing
> release, waiver and indemnity agreement is intended to
> be as broad and inclusive as is permitted by the law of
> the State of New Jersey and that if any portion thereof
> is held invalid, it is agreed that the balance shall,
> notwithstanding, continue in full force and effect.
> Member has read this release and waiver of liability
> and indemnity clause, and agrees that no oral
> representations, statements or inducement apart from
> this Agreement have been made.

[Id.] Finally, the following paragraph contains the sentence, in

all capital letters: "IN NO EVENT SHALL L.A. FITNESS BE LIABLE

FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES." [Id.]

---

[2] Severability also is mentioned at the top of the page, in
the first paragraph: "If any part of this Agreement is held by a
court of competent jurisdiction to be void or unenforceable, the
remainder of the terms and provisions of this Agreement shall
remain in full force and effect and shall not be affected." [Id.]

Plaintiff pleads no other facts about her use of Defendant's health clubs. There are no allegations that Plaintiff was injured at Defendant's facility or that she was denied the opportunity to sue or refrained from suing or was denied damages as a result of the waiver provisions. There are no allegations that Defendant has invoked the indemnity clause against Plaintiff.

Plaintiff filed a putative class action in state court under New Jersey Court Rule 4:32, alleging that Defendant's Membership Agreement violates state laws designed to protect consumers.[3] [Id. ¶ 1.]

Plaintiff alleges violations of three state statutes. In Count One, Plaintiff claims that Defendant's "misrepresentation, predatory, deceptive, and unconscionable sales practices" violate the Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1, et seq. [Id. ¶¶ 22-30.] In Count Two, Plaintiff alleges a violation of the Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J. Stat. Ann. § 56:12-14, et seq. [Id. ¶¶ 31-35.] In Count Three, Plaintiff claims a violation of the Plain Language Act ("PLA"), N.J. Stat. Ann. § 56:12-1, et seq., which requires consumer contracts to be written "in a simple, clear, understandable and easily readable way." [Id. ¶¶ 36-38.] In Count

---

[3] Plaintiff defines the relevant class as all persons in New Jersey who, since January 26, 2006, have been offered or given documents by Defendant, or signed the documents that contain the waiver provision or substantially similar provisions, as well as the limitation on special damages. [Id. ¶ 13(a).]

Four, Plaintiff requests declaratory and injunctive relief. [Id. ¶¶ 39-40.]

Specifically, Plaintiff claims that the Agreement "misrepresents to consumers that defendant is held harmless . . . for the negligent conduct of the defendant" and that "consumers must indemnify defendant . . . ." [Id. ¶ 10(a)-(b).] The Agreement "fails to inform consumers that they have clearly established legal rights," "misleads and deceives consumers" as to those rights, "deters consumers from exercising" those rights and "requires consumers to unknowingly waive clearly established legal rights . . . ." [Id. ¶ 10(c)-(f).] Plaintiff asserts the indemnification provision is unconscionable. [Id. ¶ 10(g).] Plaintiff claims that the special damages provision prohibits the award of treble damages in contravention of the CFA and the TCCWNA. [Id. ¶ 10(g).] Finally, Plaintiff claims that the format of the Agreement, at more than 3,000 words and in small type, "does not contain a table of contents and does not highlight for consumers exceptions to the main conditions of the agreement in violation of the Plain Language Act." [Id. ¶ 10(i)-(j).]

Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453. [Notice of Removal ¶¶ 1-2.] Defendant asserts the action meets the requirements for jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the putative class exceeds 100 members (225,000

L.A. Fitness memberships in New Jersey since 2006), at least one
member is a citizen of a state (New Jersey) different than the
Defendant (California), and the amount in controversy exceeds $5
million ($100 statutory fine per violation under the TCCWNA,
multiplied by 225,000 members). [Id. ¶¶ 9-11.]

Defendant now brings this motion to dismiss the complaint
and to strike class allegations. [Docket Item 10.] Defendant
argues that Plaintiff fails to state a claim under any of the
cited statutes and that the TCCWNA violates the Due Process
Clause of the Fourteenth Amendment because it is
unconstitutionally vague as applied to Defendant. [Def. Mot. Br.
at 1-2.] Defendant also moves for the Court to strike the class
allegations under Fed. R. Civ. P. 12(f), because the remedies
provided by the CFA and TCCWNA "sufficiently incentivize class
members to bring individual claims . . . ."[4] [Id. at 2.]

## III.  Standard of Review

To survive a motion to dismiss, a complaint must allege, in
more than legal boilerplate, those facts about the conduct of the
defendant giving rise to liability. Bell Atl. Corp. v. Twombly,
550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a). A plaintiff need
not explicitly allege every element of her claim but must plead
facts sufficient to provide the defendant with "fair notice" of

---

[4] The Deputy Attorney General of New Jersey notified the
Court that the Attorney General "has chosen to take no position"
on the constitutional challenge to the TCCWNA. [Docket Item 24.]

the basis for the claim and set forth "material points necessary to sustain recovery." Nix v. Welch & White, P.A., 55 Fed. Appx. 71, 72 (3d Cir. 2003) (quoting Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124 (3d Cir. 1988)). Factual allegations must present a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court, when reviewing a motion to dismiss, must "accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). The assumption of truth does not apply to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

IV. **Discussion**

   A. **Failure to state a claim under the Plain Language Act (PLA) (Count Three)**

   The Plain Language Act demands that a consumer contract be "written in a simple, clear, understandable and easily readable way." N.J. Stat. Ann. § 56:12-2. In determining whether a contract complies with this directive, "a court . . . shall take into consideration the guidelines set forth in section 10 of this act." Id. Section 10 states that "a court . . . may consider" whether (1) cross references are confusing, (2) sentences are longer than necessary, (3) sentences contain double negatives,

8

(4) sentences or sections are confusing or illogical, (5) words are used in a sense other than their ordinary common meaning, (6) the document contains frequent use of Old English words or Latin or French phrases. § 56:12-10(a). The statute adds other factors a court may consider, concerning the formatting of the contract: whether (1) sections are logically divided and captioned, (2) a table of contents or index is used in contracts of more than 3,000 words, and (3) conditions and exceptions to the main promise are given equal prominence to the main promise and if the conditions and exceptions are in at least 10-point type. § 56:12-10(b). Courts may use their discretion as to how much consideration should be given to the guidelines in a particular case. Boddy v. Cigna Prop. & Cas. Cos., 760 A.2d 823, 826 (N.J. Super. Ct. App. Div. 2000).

Plaintiff's basis for her claim is that the "contract is greater than 3000 words and does not contain a table of contents and does not highlight for consumers exceptions to the main conditions of the agreement" and the waiver and damages provisions appears "in fine print less than 10 point font . . . ." [Compl. ¶ 10(i)-(j).] Plaintiff alleges that "[t]he form contract hides the unconscionable release and indemnity provision in fine print less than 10 point font in violation of the Plain Language Act." [Id. ¶ 10(j).]

At the threshold, the Plain Language Act requires a

plaintiff to demonstrate that a material provision of the
contract violates the Act and that "the violation caused the
consumer to be substantially confused about the rights,
obligations or remedies of the contract." N.J. Stat. Ann. §
56:12-3. Further, the PLA provides: "There shall be no liability
under sections 3 and 4 [N.J. Stat. Ann. §§ 56:12-3 and 12-4
(relating to class actions)] if: a. both parties to the contract
have performed their obligations under the contract . . . ." N.J.
Stat. Ann. § 56:12-5. Thus, New Jersey courts have held that a
PLA plaintiff must allege that she was "substantially confused"
about the contract's terms, as "substantial confusion" is "a
requirement of the Plain Language Act." Bosland v. Warnock Dodge,
Inc., 396 N.J. Super. 267, 279 (App. Div. 2007), aff'd on other
grounds, 197 N.J. 543 (2009). Plaintiff's Complaint fails to
plead that she was substantially confused by the provisions of
the contract. Likewise, Plaintiff does not allege that Defendant
has failed to perform its obligations under the contract, and the
reasonable inferences also suggest that Defendant has not failed
to provide the services for which Plaintiff paid. Accordingly,
under the requirements of N.J. Stat. Ann. §§ 56:12-3 and 12-5a,
the Complaint fails to state a claim on which relief may be
granted under the PLA. Therefore, Court need not address the

substance of the alleged PLA violations.[5]

As presently pled, the Complaint fails to state a claim under the PLA and it must be dismissed. Because Plaintiff may be able to cure these deficiencies by amendment, the Court is dismissing Count Three without prejudice to Plaintiff's right to file a motion to amend within thirty (30) days.

## B. Failure to state a claim under the Consumer Fraud Act (CFA) (Count One)

To state a claim under the CFA, the plaintiff must allege (1) an unlawful practice by the defendant, (2) an ascertainable loss suffered by the plaintiff, and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's

---

[5] Plaintiff does not allege that the Agreement contravenes any of the guidelines in § 56:12-10(a). Plaintiff does, however, allege that Defendant did not abide by the guidelines in § 56:12-10(b), pertaining to the 10-point text guideline and the table of contents guideline. The Agreement here would appear to violate both guidelines, containing minuscule typeface, perhaps 7-point proportional typeface, and no table of contents, despite exceeding 3,000 words. On the other hand, the waiver and damages provisions are both announced with capital letters and are the only two provisions on the page to receive such treatment. The waiver carries the preface "IMPORTANT" and is circumscribed in a box. The Court makes no determination, but it is not clear that Plaintiff could never amend her complaint to come within the PLA's pleading requirements if the deficiencies identified in the text, supra, are addressed and overcome.

Defendant also argues that "Plaintiff's TCCWNA claim, as it relies on her PLA claim to support a violation, is unconstitutionally vague as applied to Fitness and must be dismissed." [Def. Mot. Br. at 30.] Because the Court finds that Plaintiff's claim for violation of the PLA must be dismissed, the Court need not reach Defendant's challenge of the constitutionality of the TCCWNA as applied.

ascertainable loss. N.J. Stat. Ann. § 56:8-19; see also Gonzalez
v. Wilshire Credit Corp., 25 A.3d 1103, 1115 (N.J. 2011)
(reciting the elements of the claim). An "unlawful practice" is:

> [t]he act, use or employment by any person of any
> unconscionable commercial practice, deception, fraud,
> false pretense, false promise, misrepresentation, or
> the knowing concealment, suppression or omission, in
> connection with the sale or advertisement of
> merchandise . . . , whether or not any person has in
> fact been mislead, deceived or damaged thereby . . . .

N.J. Stat. Ann. § 56:8-2. The term "merchandise" includes
"services" for the purposes of this statute. N.J. Stat. Ann. §
56:8-1(c). The New Jersey Supreme Court has held that for a
statement to be a misrepresentation prohibited by the CFA, it
"has to be one which is material to the transaction and which is
a statement of fact, found to be false, made to induce the buyer
to purchase." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 366
(N.J. 1997). For an alleged deceptive act to be actionable,
courts consider whether the act "has the capacity to mislead the
average consumer." Union Ink Co., Inc. v. AT&T Corp., 801 A.2d
361, 379 (N.J. Super. Ct. App. Div. 2002) (reciting this standard
in the context of an allegedly deceptive advertisement); see also
Adamson v. Ortho-McNeil Pharm., Inc., 463 F. Supp. 2d 496, 501
(D.N.J. 2006) (same).

    Plaintiff argues that her complaint states two bases for a
CFA violation: (1) the ban on special, incidental or
consequential damages constitutes an unconscionable, unlawful act

because it precludes the award of statutory treble damages, and (2) the breadth and scope of the waiver of liability "violate a clearly established right under TCCWNA . . . , and the provision is therefore another 'affirmative act' constituting an 'unconscionable act' under the CFA." [Pl. Opp'n at 9-11.]

### i. Ban on special, incidental or consequential damages

Defendant argues that Plaintiff fails to state a claim under the CFA. [Def. Mot. Br. at 7.] On the issue of limiting damages, Defendant first argues that because Plaintiff fails to plead facts showing she sustained any damages, the treble damages provision of the CFA never comes into play. [Id. at 16.] Defendant also argues that treble damages are punitive and thus are not barred by the Agreement at all. [Def. R. Br. at 7.] Punitive damages, like attorneys' fees, do not fall within the scope of the limitation on liability that bars only "special, incidental or consequential damages." [Id.; Compl. Ex. A.] See Daaleman v. Elizabethtown Gas Co., 390 A.2d 566, 569 (N.J. 1978) (stating that the treble damages provision of the CFA is "a punitive measure").

Plaintiff argues that the ban on damages "violate[s] the CFA's provision of treble damages," and the "ban on treble damages is unconscionable because it is one-sided in that only L.A. Fitness cannot be charged with such damages . . . ." [Id. at 10.] Plaintiff asserts that the Court should consider (1) the

13

bargaining power of the parties, (2) the conspicuousness of the putative unfair term, and (3) the oppressiveness and unreasonableness of the term in determining whether the contract is unconscionable. [Id.; see Carter v. Exxon Co. USA, 177 F.3d 197, 207 (3d Cir. 1999) (enumerating these factors).]

Defendant's first argument - that Plaintiff suffered no damage and therefore the treble damages provision is not implicated - is not a legitimate reason to find that the Defendant did not conduct an unlawful practice. The statute provides that an unlawful practice may occur "whether or not any person has in fact been . . . damaged thereby . . . ." § 56:8-2. Whether Plaintiff suffered damage - "an ascertainable loss" - becomes relevant under the second prong of the CFA analysis. This distinction is important because the New Jersey Supreme Court has stated that, if a CFA claim is properly pled and presents a triable issue, "a consumer-fraud plaintiff can recover reasonable attorneys' fees, filing fees, and costs if that plaintiff can prove that the defendant committed an unlawful practice, even if the victim cannot show any ascertainable loss and thus cannot consider treble damages." Cox v. Sears Roebuck & Co., 647 A.2d 454, 465 (N.J. 1994).

However, it is plainly true that treble damages are not barred by the limitation in the Agreement. The treble damages are mandatory under the CFA, if a plaintiff proves a violation of the

14

statute. N.J. Stat. Ann. § 56:8-19 ("In any action under this section the court <u>shall</u> . . . award threefold the damages sustained . . . .") (emphasis added); <u>see also</u> <u>Cox</u>, 647 A.2d at 465 ("an award of treble damages and attorneys' fees is mandatory"). Special damages are "[d]amages that are alleged to have been sustained in the circumstances of a particular wrong" and "[t]o be awardable, special damages must be specifically claimed and proved." Black's Law Dictionary (9th ed. 2009). Incidental damages are "[l]osses reasonably associated with or related to actual damages." <u>Id.</u> Consequential damages are those "that do not flow directly and immediately from an injurious act but that result indirectly from the act." <u>Id.</u> Just as the Agreement does not bar statutory damages, a multiplier of actual damages, mandated by statute, fits none of categories listed in the damages provision and thus is not barred. This damages limitation is thus not an unlawful practice under the CFA.[6]

**ii. Waiver of liability**

Plaintiff's complaint alleges that the waiver provision misrepresents to consumers that they cannot sue Defendant for

---

[6] Plaintiff is not arguing that the exclusion of special, incidental and consequential damages is itself unconscionable. Plaintiff generally alleges that the ban on damages is unconscionable, but her only explanation is that it prohibits recovering treble damages under the CFA. The Court makes no determination whether the ban on special, incidental and consequential damages is itself unconscionable, apart from its effect, or lack thereof, on a plaintiff's ability to receive treble damages.

15

"negligent conduct." [Compl. ¶ 10.] Plaintiff also asserts that Defendant's conduct is predatory, deceptive and unconscionable. [Compl. ¶ 23.]

Defendant argues that Plaintiff fails to state a claim because exculpatory clauses in gym membership agreements for negligence are enforceable against adult signatories, citing Stelluti v. Casapenn Enters., LLC, 1 A.3d 678, 694 (N.J. 2010) (holding that a membership agreement is enforceable when it eliminates liability for a gym stemming from its own simple negligence, but not intentional conduct, recklessness, or gross negligence). To the extent the complaint alleges the waiver is illegal because it purports to be a pre-injury release of liability for minor children, Defendant argues that the Agreement itself "does not purport to waive any rights of a minor" and that the Agreement only limits the member parent from bringing claims based on that injury (for example, loss of consortium); the minor child retains the right to sue. [Def. Mot. Br. at 10-11.]

Plaintiff argues that the waiver of liability is so broad as to hold Defendant harmless for "gross negligence, or intentional or reckless conduct" and is "designed to deter consumers' claims." [Id. at 14.] Plaintiff also argues that the pre-injury release of liability for a minor child misrepresents that minor children may not bring actions for Defendant's negligent conduct. [Id. at 18; Compl. ¶ 1.]

16

It is prudent to begin by determining what representations the Agreement makes to consumers. The Court agrees with Defendant that the Agreement does not purport to waive pre-injury liability for a minor child. The language of the Agreement clearly states that "Member assumes full responsibility . . ." and "Member hereby releases . . ." and "Member also hereby agrees to indemnify . . . ." [Compl. Ex. A.] No language suggests that minor children are assuming responsibility, releasing Defendant from liability or agreeing to indemnify Defendant. Minor children waive no rights in the Agreement.

Next, the Agreement never states explicitly that members waive rights to sue for intentional, reckless or grossly negligent conduct, although the open-ended language permits that interpretation. The Agreement purports to release Defendant from liability for acts "caused by active or passive negligence of L.A. Fitness or otherwise, to the fullest extent permitted by law . . . ." [Id. (emphasis added).] The indemnification sentence also only mentions negligence by name, but is similarly open-ended: " . . . caused by the negligence of Member(s) or otherwise." [Id. (emphasis added).] The insertion of "or otherwise" certainly permits the interpretation that the provision covers conduct other than negligence.

At the same time, the waiver provision is tempered and bounded by language that limits the member's release of liability

17

to accord with state law. The waiver provision states that members release Defendant from liability "for any loss or damage . . . to the fullest extent by law," and the Agreement is to be only "as broad and inclusive as is permitted by the law of the State of New Jersey . . . ." [Id.] The Agreement expressly acknowledges the possibility that these specific provisions of the agreement may be "held invalid" by courts. [Id.] These phrases clearly signal that the waiver is not absolute and is only as comprehensive as is permitted by law. A consumer of ordinary intelligence, without any special knowledge of law, likely would assume that Defendant could be sued in court and held liable for Defendant's own wrongdoing, particularly if the injury resulted from conduct that the law labels intentional, reckless or grossly negligent. See Stelluti, 1 A.3d at 694 (holding that health club membership agreements that release the club from liability for simple negligence are enforceable under New Jersey law). If the law permits recovery, notwithstanding the agreement, then members did not waive their rights.

The language does not misrepresent rights to consumers in a manner actionable under the CFA. To be actionable, the misrepresentation must be "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to purchase." Gennari, 691 A.2d at 366. If a consumer reviewing the Agreement interpreted the document as

Plaintiff describes in her complaint, the consumer might be more likely to reject membership than to be induced to sign up as a result of the alleged misrepresentations.

The Court's task here is not to determine whether the Agreement is enforceable as written, but rather whether it has the capacity to mislead consumers or contains false statements that induce consumers to sign up for memberships. The Court finds that the Agreement is not deceptive and not misleading for purposes of the CFA, and therefore, the Agreement cannot be the basis for an unlawful practice.

### iii. Ascertainable loss and causation

Even if Plaintiff successfully pled an unlawful practice by Defendant, she fails to plead an ascertainable loss and causation under the CFA.

Plaintiffs suffer an ascertainable loss when they receive "something less than, and different from, what they reasonably expected in view of defendant's presentations." Kleinman v. Merck & Co., Inc., 8 A.3d 851 (N.J. Super. Ct. Law Div. 2009); see also Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 99 (D.N.J. 2011) ("An ascertainable loss occurs when a consumer receives less than what was promised," quoting Union Ink, 801 A.2d at 379). An ascertainable loss need not be an out-of-pocket loss so long as it is "quantifiable or measurable" and not "hypothetical or illusory." Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783,

793 (N.J. 2005); <u>Lee v. Carter-Reed Co., LLC</u>, 4 A.3d 561, 576 (N.J. 2010). The plaintiff also must plead causation. The causation requirement of the CFA is not equivalent to reliance. "To establish causation, a consumer merely needs to demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." <u>Lee</u>, 4 A.3d at 577.

The only facts that could be construed as a loss in the complaint are Plaintiff's initiation and monthly fees. Plaintiff argues now that her ascertainable loss is "the entire amount paid under the contract . . . ." [Pl. Opp'n at 11.]

Plaintiff does not allege that she "receive[d] less than what was promised" or that her out-of-pocket expenses were "causally connected with the claimed defect" or deception or misrepresentation. <u>Romano v. Galaxy Toyota</u>, 945 A.2d 49, 55 (N.J. Super. Ct. App. Div. 2008). Plaintiff paid her initiation and monthly fees to gain access to Defendant's facility and services; there are no allegations she received anything less than what was promised. Plaintiff does not make the argument that her loss was the ability to exercise at a club where she enjoyed full legal rights. Even if such a loss were ascertainable, she cannot demonstrate that she was promised more at the time of entering the contract. This is an atypical CFA claim because Plaintiff argues not that she enjoys fewer rights than she thought she had, based on the language in the Agreement, but rather that she

enjoys more rights than were represented to her.

The heart of Plaintiff's claim appears to be that the Agreement improperly stated her rights or that the Agreement contravened state law. The alleged misconduct is a misrepresentation or unconscionable deprivation of members' legal rights, and Plaintiff suggests that a potential harm resulting from this misconduct will be that members will not exercise their legal rights. See Pl. Opp'n at 14 (stating the waiver provision "is indisputably designed to deter consumers' claims"). Plaintiff does not allege that she suffered any injury and tried, but failed, to exercise her rights, or, better still, refrained from exercising her rights because of the Agreement. The factual content in Plaintiff's complaint simply does not demonstrate, nor does Plaintiff articulate now, how any alleged unlawful practice by Defendant resulted in Plaintiff's payment of initiation or monthly fees. Plaintiff provides no link between the alleged harmful conduct and her out-of-pocket expenditure, and therefore Plaintiff fails to plead both an ascertainable loss and causation under the CFA.

Therefore, Defendant's motion to dismiss the CFA claim will be granted. Plaintiff requests in her opposition leave to amend the Complaint. [Pl. Opp'n at 7 n.4.] Because the complaint is so devoid of detail about Plaintiff and her experience at Defendant's facilities, the Court cannot state with confidence

that amendment of the CFA claim would be futile. Therefore, the dismissal of Count One will be without prejudice and Plaintiff may file a motion to amend the complaint within thirty (30) days of the entry of this Opinion and Order.

**C. Failure to state a claim under the Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA) (Count Two)**

The TCCWNA provides that no seller shall "offer to any consumer or prospective consumer or enter into any written consumer contract . . . which includes any provision that violates any clearly established legal right of a consumer . . . as established by State of Federal law at the time the offer is made or the consumer contract is signed . . . ." N.J. Stat. Ann. § 56:12-15. The statute provides a remedy when a contract or notice "simply contains a provision prohibited by state or federal law . . . even if a plaintiff has not suffered any actual damages." Barows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347, 362 (D.N.J. 2006). The statute also provides that the rights under the TCCWNA themselves cannot be waived: "No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act." § 56:12-16.

Defendant argues that because Plaintiff's claim is predicated on violations of the CFA and the PLA, and because Plaintiff fails to state a claim under those statutes, her TCCWNA

22

claim must fail. [Def. Mot. Br. at 19.] Defendant argues that
Plaintiff "does not allege any other basis" for her TCCWNA claim
because she "has not alleged that any 'clearly established right'
has been violated . . . ." [Id. at 20.]

Plaintiff asserts that her claim under the CFA is a
violation of clearly established law under the TCCWNA. [Pl. Opp'n
at 13.] Plaintiff also claims that the waiver provision "directly
violates TCCWNA" because its scope encompasses intentional or
reckless behavior or gross negligence, in violation of state law.
[Id. at 14.] In addition, Plaintiff argues that Defendant owes a
duty to business invitees to keep its premises safe and suggests,
without stating explicitly, that waiver of premises liability
contravenes clearly established law in New Jersey. [Id. at 15-
16.] Plaintiff also claims that pre-injury release of liability
for minor children violates New Jersey law.[7] [Id. at 16.]

The Court holds that the waiver and indemnity provisions do
not violate "clearly established law" because the provisions
themselves purport only to be coextensive with the laws of New
Jersey. The waiver provision states explicitly that the member
"releases and holds L.A. Fitness . . . harmless from all
liability . . . to the fullest extent permitted by law." [Compl.

_____

[7] The Court already has rejected Plaintiff's contention that
minor children waive rights in the Agreement, supra Part
III.B.ii, and rejects that contention for purposes of the TCCWNA
claim, too.

23

Ex. A.] Likewise, the "indemnity agreement is intended to be as broad and inclusive as is permitted by law in the State of New Jersey . . . ." [Id.] To the extent that premises liability is clearly established by New Jersey law - and the Court notes that it may not be clearly established that health clubs are prohibited from waiving premises liability in membership agreements - the Agreement by its own terms does not waive such liability. See Martina v. L.A. Fitness Int'l, LLC, No. 12-2063, 2012 WL 3822093, at *4 (D.N.J. Sept. 4, 2012) (stating that the membership agreement did not violate the TCCWNA, in part because the agreement was limited to what was "permitted under the laws of the State of New Jersey" and that "language . . . shows an attempt by the drafter to conform to New Jersey laws"). It is true that a consumer, unfamiliar with the laws of New Jersey, would not be able to state with certainty how far the waiver extends, but that is not grounds for a TCCWNA violation. It is also true that the Agreement's language might give an inattentive reader the wrong impression about the law, if the reader skips over the limiting phrases "to the fullest extent permitted by law" and "as is permitted by law." However, that does not mean that the Agreement itself violates clearly established law, for TCCWNA purposes.

Because Plaintiff fails to plead any clearly established law that the Agreement violates, the motion to dismiss the TCCWNA

claim will be granted. This dismissal will be without prejudice, and Plaintiff may file a motion to amend the complaint within thirty (30) days if Plaintiff seeks to redress these deficiencies.

### D. Declaratory and Injunctive Relief

Having dismissed Plaintiff's claims, no basis remains in the Complaint to enter declaratory or injunctive relief, and Count Four of the Complaint will be dismissed without prejudice.

Similarly, with no claims remaining, Defendant's motion to strike class allegations will be denied as moot.

## IV. Conclusion

Plaintiff fails to state claims under the Plain Language Act, Consumer Fraud Act, and the Truth-in-Consumer Contract, Warranty and Notice Act. The PLA claim, the CFA claim and the TCCWNA claim will be dismissed without prejudice and Plaintiff may file a motion to amend her complaint within thirty (30) days if Plaintiff is able to cure the deficiencies identified herein. Count Four, requesting declaratory and injunctive relief, likewise will be dismissed without prejudice. Defendant's motion to strike class allegations will be dismissed as moot. An accompanying Order will be entered.


__February 13, 2013__                    __s/ Jerome B. Simandle__
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge